IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARIE and TIM MARTINEZ, on behalf of
L.M., L.M. and A.M., minor children,

      Plaintiffs,

      v.                                                  No. CV-12-00923 WJ/LFG

ESPAÑOLA PUBLIC SCHOOL DISTRICT,[1]
ROBERTO ARCHULETA, JIMMY LARA,
ROSS QUINTANA, SADIE MARTINEZ and
JANETTE ARCHULETA, each individually
and in their capacities as state actors,

      Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING COMPLAINT WITH PREJUDICE**

THIS MATTER comes before the Court upon a Motion to Dismiss on the Basis of Qualified Immunity, filed on November 21, 2012 **(Doc. 27)** by Defendants Española School District, Jimmy Lara and Sadie Martinez. Having reviewed the parties' briefs and applicable law, I find that Defendants' motion is well-taken and shall be granted, in that Plaintiff has voluntarily dismissed with prejudice Count I of the Amended Complaint alleging a state law claim under the New Mexico Tort Claims Act, and has failed to state a substantive due process claim in Count II in the Amended Complaint under Rule 12(b)(6).

**BACKGROUND**

Plaintiffs Marie and Tim Martinez bring this action on the behalf of their minor children, A.M. and L.M. The lawsuit stems from Defendants' alleged conduct as school employees,

---

[1] Defendants note, correctly, that Plaintiffs should have named the Board of Education for the Española School District as the proper entity. *See* §22-5-4 NMSA. Also, Defendants Roberto Archuleta, Ross Quintana and Janette Archuleta were not named as Defendants in Plaintiff's Amended Complaint, Doc. 24.

negligently operating the school, and failing to protect the Plaintiff children from dangerous circumstances. Plaintiff filed the complaint on July 25, 2012 in the First Judicial District, County of Rio Arriba, State of New Mexico. Defendants removed the case to federal court on August 30, 2012. The amended complaint (Doc. 24) asserts two counts, negligent operation and maintenance of school property and machinery under the New Mexico Tort Claims Act, NMSA §41-4-6 (Count I), and violation of the students' constitutional rights under a danger creation theory (Count II).

## I.   Allegations in Amended Complaint

The Amended Complaint ("complaint") sets forth the conduct which forms the basis of Plaintiffs' claims.

A.   <u>Student A.M.</u>

A.M. was a student at Valarde Elementary school in Española, New Mexico, and had "diagnosed learning differences" that were well known to his teacher, Defendant Jimmy Lara. The complaint alleges that during the 2008 school year, Defendant Lara exploited A.M. with verbal abuses based on these learning differences.

Defendant Lara verbally abused A.M., calling him "stupid" and telling A.M. that he was going to take A.M.'s head off and "throw it out the door." Following this verbal abuse, A.M.'s therapist had a meeting with Sadie Martinez (the "head teacher" and unofficial assistant principal) and Dorothy Sanchez on September 29, 2008.[2] During this meeting, the therapist asserted that the verbal abuse was damaging to A.M. and that he would need extra attention to ensure that he was successful in school.

Despite the therapist's requests that the information discussed at the meeting not be released to other children, Defendant Lara began making disparaging comments about A.M. in

---

[2]   The Amended Complaint does not identify the role of Ms. Sanchez.

front of the other children in A.M.'s class.  For example, Lara called A.M. "a baby" because someone had to bring him a pencil and paper every day, and asked A.M. "did you bring your bottle today, son"?   These comments allegedly brought on months of verbal and physical abuse on A.M. by other children, including having his backpack and jacket cut with scissors.   Lara tolerated and encouraged this behavior and also encouraged other children to isolate A.M., threatening other children with a "time-out" at recess if they talked to A.M.

Defendant Sadie Martinez, head teacher at Velarde, had actual knowledge of the abuse suffered by A.M. but did not to stop it, despite requests from A.M.'s parents.

B.      Student L.M.

L.M. (A.M.'s sister) became the object of bullying at the school, beginning in 2010, when she refused to kiss a boy at an event.  A number of girls began to call L.M. a "lesbian" and a "bitch."  L.M. was harassed daily at school and on the school bus.   When L.M.'s parents encouraged her to tell a teacher or counselor about the abuse she was suffering at school, she told her parents that "no one listens."

On one occasion, L.M. was hit and kicked on the bus by a group of girls, one of whom was a girl named "S."  On the day after the attack, Marie Martinez (L.M.'s mother) called S's mother to discuss the incident.  S's mother went directly to the school and pulled L.M. out of class to confront her, and no school employees made any efforts to prevent S's mother from doing so.

When Ms. Martinez complained to Sadie Martinez about the bus incidents, Sadie Martinez told Marie that the attacks were a problem for the bus driver.  The complaint alleges that Sadie Martinez actually knew of the harm and the risk of additional harm but took no action to prevent the child from suffering injury.

L.M. was sore after being punched and kicked on the bus, and took Ibuprofen over the next 18 hours.  She also became fearful of being beaten again, so much so that she cried, got an upset stomach, and had to sleep with her mother in order to be comforted.  In mid-March of 2010, a male student hit L.M. in the back with his backpack.   During the week of March 22, 2010 a female student sprayed cologne in L.M.'s face.   On Monday, March 29, 2010 two boys attacked L.M. in the school cafeteria.  One punched her on the back; the other hit her in the face.

## II.     Legal Standard

Defendants raise the defense of qualified immunity.  Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once a defendant pleads qualified immunity, the burden shifts to the plaintiff to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   A right is clearly established "if [t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*  The challenged action need not have been previously declared unlawful, but its unlawfulness must be evident in light of existing law. *Beedle vs. Wilson*, 422 F.3d 1059 (10th Cir. 2005).   This is generally accomplished when there is controlling authority on point or when the clearly established weight of authority from other courts supports plaintiff's interpretation of the law. *Id*.

The Court applies the same standard in evaluating the merits of a motion to dismiss in qualified immunity cases as to dismissal motions generally: a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v.*

4

*Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court must accept as true all well pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in the light most favorable to the non-moving party. *Shero v. City of Grove, Okl*., 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Twombly*, 550 U.S. 544).  The complaint must plead sufficient facts, taken as true, to provide plausible grounds that discovery will reveal evidence to support the plaintiff's allegations.  *Id.*

### DISCUSSION

In the response, Plaintiffs state that they voluntarily dismiss with prejudice the state law claim in Count I brought pursuant to the Tort Claims Act.  Doc. 32 at 3.  Thus, the only remaining claim for the Court to address is Count II, asserting a substantive due process claim, which Defendants contend Plaintiffs have failed to allege.

**Substantive Due Process Claim (Count II)**

Plaintiffs allege that Defendant Lara initiated, encouraged and promoted bullying, humiliation and harassment of A.M. and L.M., causing, creating and increasing the risk of danger to the children directly, and indirectly and the effect such actions had on other children at the school.  Am.Compl. ¶ 28.  The question is whether Plaintiff has alleged facts which support a plausible claim under the Fourteenth Amendment substantive due process claim.[3]

---

[3]  The Amended Complaint omits reference to the Fourteenth Amendment, but the Court assumes that Plaintiff pleads this claim, given that the claim is based on a "danger creation" theory.  A plaintiff also may assert a Fourteenth Amendment substantive due process claim under a "special relationship" theory as well.  This exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection.  *See Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996).  However, the Tenth Circuit has held that compulsory school attendance is insufficient to create a special relationship for the purpose of triggering an affirmative duty to provide protection to an individual.  *Seamons v. Snow,* 84 F.3d 1226, 1236 (10th Cir. 1996).

The Court recently addressed similar claims by parents of students who attended other schools in the Española school district.  *See Montoya et al v. Española Public School District Board of Educ.,* No. 10-CV-651 WPJ/LFG, Docs. 330 at 5-7; 333 at 9-12; 335 at 8-9; 339 at 10-15; and 340 at 5-8.  The Court's analysis in that case on those claims underscore the high threshold for plaintiffs wishing to assert substantive due process claims based on a danger creation theory.

State actors such as Defendants here are liable only for their own acts, and not for the violent acts of third parties. *See Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996).  .*See,* Docs. 330, 330, 335.   However, a state also may be liable for an individual's safety if it created the danger that harmed that individual. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir.1995) (citing *Medina v. City and County of Denver*, 960 F.2d 1493, 1495–99 (10th Cir.1992)).   For this "danger creation" theory, the Tenth Circuit has created a six-part test to determine whether a defendant has created a special danger for the plaintiff:

(1) the charged state actors created the danger or increased the plaintiff's vulnerability to the danger in some way; (2) the plaintiff was a member of a limited and specifically definable group; (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the defendants acted recklessly in conscious disregard of that risk; and (6) the conduct, when viewed in total, shocks the conscience. *Ruiz v. McDonnell*, 299 F.3d 1173, 1182–83 (10th Cir.2002) (citing *Armijo by and Through Chavez v. Wagon Mound Public Schools,* 159 F.3d 1253, 1262-63 (10th Cir. 1998) ("*Wagon Mound*")).

The Tenth Circuit has held that a school's alleged failure to take action designed to ensure the student's safety "in the face of known dangers" does not create a basis for liability under the danger creation theory. *Graham v. Independent School Dist. No. I-89*, 22 F.3d 991 (10th Cir. 1994).   Even the foreseeability of harm cannot create an affirmative duty to protect without the existence of a custodial relationship, or without an affirmative act on the part of the school officials putting the student in danger.  *Id*. at 994.   The Tenth Circuit recently reaffirmed its holdings in *Graham* in the case of *Gray v. University of Colorado Hosp. Authority*, 672 F.3d 909, 916 (10th Cir. 2012).   Thus, in order to sufficiently allege that Defendants violated her

substantive due process rights, Plaintiffs A.M. and L.M. must each allege facts consistent with affirmative conduct taken by Defendants that put him in danger and which were truly conscience-shocking.

Plaintiffs cite to a recent Tenth Circuit case, *Estate of B.I.C. v. Gillen,* for the proposition that affirmative conduct by the defendant is no longer a requirement in this circuit for a substantive due process claim based on the danger creation theory.  702 F.3d 1182 (10th Cir. 2012).   However, Plaintiffs misstate both *Gillen's*  analysis and holding, because *Gillen* continues to adhere to the Tenth Circuit's previous holding in *Gray* concerning affirmative conduct, stating that "[a]s an initial matter, a showing of affirmative conduct and private violence are preconditions necessary to invoking the state-created danger theory." 702 F.3d at 1187 (citing *Gray v. Univ. Colo. Hosp. Auth*., 672 F.3d 909, 920 n. 8 (10th Cir.2012)).

Thus, *Gillen* does not depart from the requirement of affirmative conduct, but rather qualifies what *kind* of conduct constitutes affirmative conduct.  In *Gillen,* the Tenth Circuit suggests that there are certain circumstances of "intentional or malicious inaction" which could be considered affirmative action.  702 F.3d at 1188 ("We have yet to hold that such intentional or malicious inaction cannot constitute an act for purposes of establishing a danger-creation claim.").   Such conduct "goes beyond" negligence, an indifference in failing to act, or allowing unreasonable risks to persist; rather, is it "*deliberate, affirmative conduct*" in light of a defendants' "specific knowledge of real danger . . . ." *Id.*  at 1188.

As Defendants point out, *Gillen* does not offer much support for Plaintiffs in the circumstances in this case.  *Gillen* was not a school bullying case, but arose in the context of a social worker who made a "deliberate decision to ignore" multiple instances of extreme child abuse that resulted in a minor's death "based on decade-old animosity toward" the family of the

7

minor child. 702 F.3d at 1187-88. Ms. Gillen, the social worker, made a deliberate decision to not remove the minor child from a home where the child was being abused, even though the minor child's grandparents and law enforcement had expressed repeated concerns that the child was being subjected to serious abuse. Id. at 1188-90. The Tenth Circuit reversed the district court's grant of summary judgment to defendants based on qualified immunity, finding that viewing the evidence favorably to plaintiff, there remained a factual issue in that case as to whether the social worker "purposefully, maliciously, and intentionally failed to act," thereby placing the child in harm's way. *Id.,* 1187-88.

Plaintiffs cannot rely on *Gillen* in arguing that Defendant Lara's conduct "shocked the conscience" because the alleged facts, accepted as true, do not rise to the same level of outrageousness. Plaintiffs allege that Defendant Lara was verbally abusive of A.M. and encouraged other children to isolate A.M., even after A.M.'s therapist opined that the verbal abuse was damaging to A.M. This conduct may be considered affirmative conduct which is insensitive and even callous, but it is not truly "conscience-shocking." The facts in the case, *Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata County, Okla,* are much closer to the facts in the instant case than *Gillen.* In *Sutherlin,* a plaintiff-student was subjected to almost constant bullying by his peers. 2013 WL 1975644, 4 (N.D.Okla.). The student was called names by other children and repeatedly subjected to physical abuse. Despite complaints lodged with the school district, nothing was done to limit the bullying of the student, and plaintiffs alleged that the school district itself engaged in bullying behavior. The harassment eventually resulted in the student becoming depressed, withdrawn, and suicidal. The *Sutherlin* court found that while these actions and inactions demonstrated "bad judgment and insensitivity, even to a high degree," they

were not "brutal" and "offensive" enough to meet the high standard of conscience shocking behavior.  The same can be said of Defendants' conduct in this case.

Plaintiffs also allege that the school's head teacher knew about the abuse suffered by A.M. but did nothing to stop it.  Under Tenth Circuit precedent, the school's failure to act on the matter does not constitute affirmative conduct, much less conduct that "shocks the conscience." *See, e.g., Abeyta by & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19,* 77 F.3d 1253, 1258 (10th Cir.1996) (teacher's behavior in repeatedly calling student "prostitute" and ignoring other students' similar treatment was not conscience shocking).  Thus, Plaintiffs have not alleged a plausible substantive due process claim under *Iqbal-Twombly*.

The facts alleged as to student L.M. fare no better under an *Iqbal-Twombly* standard.  The facts concerning L.M. center around instances of bullying by other students (such as a male student hitting L.M. in the back with his backpack), and where school officials took no action to rectify the harassment by other students.  L.M. alleged that "no one listened" to her complaints about the harassment.   When the mother of the student who attacked L.M. on the school bus went to the school to confront L.M., none of the school employees tried to stop her from doing so.  However, none of this inaction can plausibly be characterized as the kind of deliberate, spiteful or malicious conduct which rises to the level of affirmative conduct that "shocks the conscience."  Further, Plaintiff alleges no affirmative conduct by any Defendant (such as when the head teacher responded to L.M.'s mother about the bus incidents by deferring the matter to the school bus driver) which can be fairly or plausibly be considered as outrageous or "conscience-shocking." The facts in the instant case are quite distinguishable in nature and level of outrageousness from either *Gillen,* on which Plaintiffs rely, and from the earlier Tenth Circuit case in *Wagon Mound,* 159 F.3d at 1264 (finding as conscience shocking school counselor's

taking of mentally disabled teenager home after suspension and leaving him alone where school was aware that teen was suicidal and distraught, had access to firearms, and teen ultimately committed suicide).

Accordingly, the Court finds that Plaintiffs have failed to allege a plausible claim sufficient to comport with the standards under Rule 12(b)(6) and *Iqbal-Twombly.*.

**THEREFORE,**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss on the Basis of Qualified Immunity **(Doc. 27)** is hereby GRANTED in part and DENIED as MOOT in part:

(1) Count I of the Amended Complaint alleging a state law tort claim under the Tort Claims Act is hereby DISMISSED WITH PREJUDICE based on Plaintiff's voluntarily dismissal of the claim with prejudice under Rule 41(a)(1)(A); and

(2) Count II of the Amended Complaint alleging a substantive due process claim is DISMISSED WITH PREJUDICE based on failure to state a claim under Rule 12(b)(6). .

A Rule 58 Judgment shall be entered separately.

_____
UNITED STATES DISTRICT JUDGE